UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-21862-CV-GAYLES/OTAZO-REYES

TYRONE WHITE,

    Plaintiff,

vs.

MIAMI-DADE COUNTY and
J.D. PATTERSON,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Miami-Dade County and J.D. Patterson, by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rules 7.1 and 56.1, file their Motion for Summary Judgment seeking judgment as a matter of law and dismissal of all thirteen counts in Plaintiff Tyrone White's Third Amended Complaint (ECF No. 54).

White claims Miami-Dade County and J.D. Patterson, a former Director of the County's Police Department, subjected him to race discrimination, age discrimination, hostile work environment harassment, retaliation, and constitutional violations that began when the department initiated an internal affairs investigation in 2011 and continues to this day. For Whites claims to be true, this Court would have to believe that the County Mayor, the Deputy Mayor, three MDPD directors, five MDPD assistant directors, two Professional Compliance Bureau majors, three members of a randomly assigned disposition panel and the sergeant tasked with the internal affairs investigation worked together to harm White without ever mentioning his race, his age, or his complaints of discrimination. This Court would also have to ignore the

fact that White actually received and deposited two checks for $8,645.15 and $14,079.08 that were intended to pay MDPD for off-duty jobs performed by MDPD officers. Ultimately, after wading through White's allegations and suppositions and applying the law, no reasonable juror could conclude that he has established any claims against the County or former Director Patterson.

**FACTUAL BACKGROUND**

On December 27, 2017 Plaintiff Tyrone White initiated this action by filing a Complaint in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, entitled Tyrone White v. Miami-Dade County and James K. Loftus, an individual, Case No. 2017-029878-CA-01. (ECF No. 1-1, Notice of Removal, Exhibit A). White named J.D. Patterson as a defendant for the first time on June 1, 2018, when he filed his Amended Complaint. (ECF No. 11). White's Third Amended Complaint consists of thirteen counts alleging claims under the Florida Civil Rights Act, Fla. Stat. § 760.10 ("FCRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and for constitutional violations under 42 U.S.C. § 1983.

White's claims stem from his employment in the Miami-Dade Police Department ("MDPD"), where he began working in 1983. White moved up the ranks in the department without incident until 2011, when the department's Fiscal Administration Bureau discovered White received and deposited two checks from Dolphin Stadium that were intended to pay for services rendered by MDPD. Someone in the Dolphins organization used the drop down menu to select the wrong payee—"Miami-Dade Police Department Football Coach Tyrone White" instead of "Miami-Dade Police Department Fiscal Administration Bureau". But the Dolphins checks were usually accompanied by an invoice showing what the check was for, and the

amounts were large enough to cause concern. Based on the preliminary investigation, then MDPD Director Loftus demoted White, who was serving as an appointed member of his command staff, back to his civil service position of captain. The internal affairs investigation took over a year. During that time White, who received the checks, and Kiriakos Beruty, who used the account White deposited the checks into, were both relieved of duty. The investigation ended with 19 investigative allegations against White, 7 investigative allegations against Beruty, and one allegation against a civilian employee. MDPD followed its normal procedure and convened a three person disposition panel to review the allegations and make a determination as to whether any of the allegations would stand. The panel dismissed all but six of the allegations against White. Again, MDPD followed its normal procedure and disciplined White based on the disposition panel's six sustained allegations.

At this point, Director Loftus had resigned, and J.D. Patterson replaced him as the new MDPD Director. Although the disciplinary action report recommending White's dismissal was forward in May 2013, Director Patterson did not make the final decision to terminate White from his employment until August 26, 2013, when it became clear that White would not give the department the money he had mistakenly received from the Dolphins. White appealed his termination through the grievance and arbitration procedure outlined in the collective bargaining agreement governing his employment at the time, and one year later an arbitrator ordered his termination rescinded and that White be made whole with full back pay and benefits. The arbitrator did, however, finally get White to return the Dolphin money by allowing the department to deduct the $22,725.23 from White's back pay.

When White returned to work on September 1, 2014, he was reinstated to the position he held for more than a year before his termination- captain. White has not received any discipline,

poor performance evaluations, or verbal reprimands since his return. White did lose out on the two Police Chief promotions he applied for, as did many of the other applicants. Director Patterson promoted Major Thomas Hanlon to Police Chief on March 30, 2015 and did not promote the five other finalists for the position, which included White. On June 6, 2016 Director Perez promoted Major Richard Amion, Major Andrianne Byrd, Major Ariel Artime, and Major Mirtha Ramos to Police Chief instead of White, who was not selected for an interview. There is no evidence that either director made these promotions for any reason other than because they believed these candidates were the most qualified for the position.

## LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Greenberg v. BellSouth Telecommunications, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (citations and internal quotations omitted). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314-15 (11th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts—there is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007). Allowing the plaintiff to survive summary judgment is inappropriate if the record conclusively revealed some other, nondiscriminatory reason or the plaintiff created only a weak issue of fact as to whether the

employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. See Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1339 (11th Cir. 2015), cert. denied sub nom. Flowers v. Troup Cty., Georgia, Sch. Dist., 136 S. Ct. 2510 (2016).

**MEMORANDUM OF LAW**

      A.  WHITE'S CLAIMS ARE SUBJECT TO THE FOLLOWING LIMITATIONS

**A 4-year statute of limitation applies to White's FCRA and §1983 claims.**

Florida's four-year statute of limitations for statutory causes of action applies to White's FCRA claim. See Ellsworth v. Polk Cty. Bd. of Cty. Comm'rs, 780 So. 2d 903, 905 (Fla. 2001); Abram-Adams v. Citigroup, Inc., 491 F. App'x 972, 975 (11th Cir. 2012) (holding that four year statute of limitations applied to plaintiff's FCRA claims). Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. § 1983. Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003); see also Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought"). White filed his initial Complaint against Miami-Dade County and James Loftus on December 27, 2017. The only acts of discrimination this Court may consider for White's FCRA claims for race discrimination (Count IV), age discrimination (Count V) and retaliation (Count VI) and for White's § 1983 claim against the County (Count XI) are those acts which occurred on or after December 27, 2013. White's FCRA and § 1983 claims against the County consist of two adverse employment actions—not receiving the promotion to chief that Hanlon received in March 2015 and not receiving the promotion to chief that went to Major Richard Amion, Major Andrianne Byrd, Major Ariel Artime, and Major Mirtha Ramos in June 2016.

A different limitations period applies to White's claims against Patterson, who was not named as a defendant in White's initial complaint. White named J.D. Patterson as a Defendant for the first time on June 1, 2018, when he filed his Amended Complaint (ECF No. 11). In his Amended Complaint, White alleged Patterson violated § 1983 by depriving White of his right to be free from retaliation (ECF No. 11, Amended Compl. at Count IX). The four year statute of limitation limits White's claims against Patterson (Counts IX and X) to those acts occurring on or after June 1, 2014. The only act that can form the basis of White's § 1983 claims against Patterson would be Patterson's decision not to promote White in 2015—White did not suffer any other adverse employment action between June 1, 2014 and February 1, 2016, the date Patterson retired.

**White's Title VII, ADEA, and FCRA claims are limited by the scope of his EEOC Charges.**

Title VII, the ADEA and the FCRA all require that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination before filing a lawsuit. See Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004) (ADEA); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (Title VII); Buade v. Terra Group, LLC, 259 So. 3d 219, 222 (Fla. 3d DCA 2018) (FCRA). For a Title VII or ADEA charge to be timely in Florida, it must be filed not more than 300 days after the alleged unlawful employment practice occurred. See Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002). "The FCRA requires that a claimant file a complaint with the FCHR within 365 days of the alleged violation." Collins v. Miami-Dade Cty., 361 F. Supp. 2d 1362, 1378 (S.D. Fla. 2005). A claim is time barred if it is not filed within these time limits. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Discrete discriminatory acts such as termination and failure to promote are not actionable

if time barred, even when they are related to acts alleged in timely filed charges, and each discrete discriminatory act starts a new clock for filing charges alleging that act. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002) ("While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable"). In light of the purpose of the EEOC exhaustion requirement, a plaintiff's judicial complaint is also limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. See Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004). White's Title VII, ADEA, and FCRA claims are limited to those discrete acts that occurred within 300 or 365 days of each charge of discrimination, and can only include the discrimination or retaliation claims actually raised in each charge.

**Charge No. 510-2014-03955, dated June 13, 2014**

On June 13, 2014 White signed and dated his first EEOC Charge of Discrimination, Charge No. 510-2014-03955 ("2014 Charge"). White's only actionable claims under Title VII and the ADEA for the 2014 Charge are those that arose on or after August 17, 2013. Accord E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) ("Because the EEOC filed its charge on June 25, 1991, discriminatory acts occurring prior to August 29, 1990 are outside the scope of this action"). White's only actionable FCRA claims are those that arose after June 13, 2013.[1] The only adverse employment action White can even arguably proceed under for the 2014 Charge is the August 29, 2013 termination of his employment. White also recognized

---

[1] However, because a 4 year statute of limitation applies to White's FCRA claims, the only actionable FCRA claims are those that arose after December 27, 2013.

this because his 2014 Charge also lists August 29, 2013 as the earliest date discrimination took place.

The scope of White's 2014 Charge is also limited to the claims actually alleged. See e.g. Ramon v. AT & T Broadband, 195 F. App'x 860, 866 (11th Cir. 2006) ("Because neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust those claims"). In the 2014 Charge, White alleges: (1) on September 26, 2011 he became the subject of an Internal Affairs Complaint ("IA-2011-0244") in a targeted effort to remove him from his position, destroy his reputation, and prevent his future advancement in MDPD, (2) on October 20, 2011 he was demoted and relieved of duty prior to the conclusion of the IA investigation; (3) on August 29, 2013 his employment was terminated as a result of IA-2011-0244. Although the 2014 Charge checks the box for "Race", "National Origin", "Retaliation", and "Age" discrimination, the allegations in the charge relate solely to race discrimination. The 2014 Charge compares White's treatment to the treatment received from "White and Hispanic Males similarly situated within MDPD", refers to a verbal complaint White made about "the disparity of treatment in comparison to my white male co-workers" and alleges "a pattern and practice of discrimination against African Americans in management positions within the department." White cannot assert an age discrimination, hostile work environment, or retaliation claim based on the allegations in the 2014 charge. See, e.g. Green v. Elixir Indus., Inc., 152 F. App'x 838 (11th Cir. 2005) (affirming summary judgment based on finding that EEOC charge was insufficient to provide notice of hostile work environment claim); Jean Pierre v. Park Hotels & Resort, Inc., No. 17-CV-21955, 2017 WL 4408972 (S.D. Fla. Oct.

4, 2017) (granting motion to dismiss hostile work environment claims because charge of discrimination was wholly silent as to any alleged harassment based on religion).

**Charge No. 510-2015-00973, dated December 4, 2014**

White filed a second EEOC Charge, Charge No. 510-2015-00973 ("2015 Charge"), on December 4, 2014. For the 2015 Charge, White's only actionable claims under Title VII and the ADEA are those that arose on or after February 7, 2014 (after December 27, 2013 for the FCRA). White did not report to work at MDPD from August 29, 2013, the date of his termination, through September 1, 2014, when he was reinstated with back pay pursuant to an arbitration hearing appealing his termination. The only actionable claims White could have under the 2015 Charge would be limited to acts that occurred between September 1, 2014 and December 4, 2014. There is no evidence of any actionable claims occurring during that time. Instead, the 2015 Charge alleges only that the County "refused to implement the Arbitration Award". However, White is precluded from raising a collateral attack in this case. See, e.g. City of Miami Springs v. Barad, 448 So. 2d 510, 511 (Fla. Dist. Ct. App. 1983) (finding that plaintiff, having voluntarily submitted himself to and fully utilized the administrative review procedures provided by the Miami Springs Code of Ordinances, was not entitled to relief through an independent action collaterally attacking the City's determination to demote him).

**Charge No. 510-2017-03970, dated December 7, 2016**

On December 7, 2016 White filed a third EEOC Charge, Charge No. 510-2017-03970 ("2017 Charge"). The 2017 Charge is the first charge where White raises a failure to promote claim. The only actionable claim in the 2017 Charge White has under Title VII, the ADEA or the FCRA relates to MDPD's decision not to promote White to the Police Division Chief position he

applied for on April 20, 2016. White did not suffer from any other adverse employment action during the period covered by the 2017 Charge.

### B. PATTERSON IS ENTITLED TO QUALIFIED IMMUNITY

As an initial matter, White's claims against Director Patterson should be dismissed because Director Patterson is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982). Qualified immunity "gives ample room for mistaken judgments" and affords protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343, 349 (1986). Although White's TAC is filled with conclusory allegations, White admitted that Patterson never mentioned his race or his complaints about POAT. There is also no evidence that Patterson's decision to promote Hanlon instead of White violated White's clearly established statutory or constitutional rights. White has not presented any factual evidence to suggest that no reasonable employer could have selected Hanlon over him.

Patterson is entitled to summary judgment on the basis of qualified immunity if he can show that he acted for lawful reasons. Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996). An official is entitled to qualified immunity where the record shows he was motivated by unlawful reasons but that he was also "motivated *at least in part*, by lawful considerations." Stanley v. City of Dalton, 219 F.3d 1280, 1296 (11th Cir. 2000) (emphasis added). Here, the record evidence establishes that Patterson did not trust White's integrity as a result of his behavior with the checks, and that Hanlon had significant work experience and qualifications when he was promoted to chief, which are lawful considerations for any employer. The inquiry into whether

Patterson's proffered reason was merely pretextual centers on his beliefs, "not the beliefs of the employee or even objective reality." Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010). Because White cannot establish that Patterson was not motivated by lawful reasons, Patterson is entitled to qualified immunity.

### C.  WHITE CANNOT PROVE AGE OR RACE DISCRIMINATION[2]

"The same legal standard is applied by courts analyzing claims under Title VII, the ADEA, and the FCRA." Sheppard v. Sears, Roebuck & Co., 391 F. Supp. 2d 1168, 1177 (S.D. Fla. 2005). Likewise, claims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework. See Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001). The plaintiff must initially establish a prima facie case of discrimination.  Once the plaintiff has done so, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for subjecting the plaintiff to an adverse employment action. One the defendant has done so, the burden shifts back to the plaintiff to show that the reasons offered by the defendant were merely pretext. Id. Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff. Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006).

To establish a prima facie case for disparate treatment in an employment discrimination case, White must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. See

---

[2] "Because the FCRA is patterned after Title VII of the federal Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e et seq., we look to federal case law as well as Florida decisions to interpret the statute." Johnson v. Great Expressions Dental Centers of Florida, P.A., 132 So. 3d 1174, 1176 (Fla. 3d DCA 2014); Florida courts apply federal case law interpreting the ADEA to cases arising under the FCRA. See Sunbeam Television Corp. v. Mitzel, 83 So. 3d 865 (Fla. Dist. Ct. App. 2012); Yaro v. Israel, 242 So. 3d 1140 (Fla. Dist. Ct. App. 2018); The elements of

Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016) (analyzing age and gender discrimination claims under the ADEA and Title VII); McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (analyzing Title VII and § 1983 race discrimination claims).

In the failure-to-promote context, the prima facie case consists of showing that White: (1) belongs to a protected class; (2) applied for and was qualified for a promotion; (3) was rejected despite his qualifications; and (4) that other equally or less-qualified employees outside his class were promoted. Brown v. Alabama Dept. of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). White's failure to promote claim is limited to the position he actually applied for—not the positions he believes he should have gotten without applying. "Generally, a plaintiff cannot claim an employer discriminatorily failed to give a promotion when the employee never applied for the position." Giles v. BellSouth Telecommunications, Inc., 542 F. App'x 756, 760-61 (11th Cir. 2013).

**White Cannot Establish a Prima Facie Case of Race Discrimination**

White cannot establish a prima facie case of race discrimination because he cannot show that MDPD treated similarly situated non-black employees more favorably than he was treated. To satisfy the third prong, a "…comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). This Court can reject comparators that are not similarly situated. See Horn v. United Parcel Services, Inc., 433 F. App'x 788, 794 (11th Cir. 2011) ("Therefore, the district court did not err by rejecting [plaintiff's] comparators on the basis of material differences in rank, responsibilities, and supervisors"). There is no evidence that any other police major received and deposited two checks totaling $22,725.23 delivered to their MDPD address. There is no evidence that any other police major received checks in any amount

that was intended to pay for MDPD services. Instead, White alludes to other officers, often of different or unspecified ranks, involved in other internal affairs investigations, without regard to the differences between their misconduct and his. But this is legally insufficient. See Stevens v. City of Forest Park, 635 F. App'x 690, 700 (11th Cir. 2015) ("Where a plaintiff and a comparator are disciplined differently, the quantity and quality of a comparator's misconduct must be "nearly identical" to that of the plaintiff for this to support the plaintiff's discrimination claim"). The individuals named in the Panama investigation also worked under a different director, had different ranks, and were disciplined by different supervisors—they were not similarly situated to White. See Simionescu v. Bd. of Trustees of Univ. of Alabama, 482 F. App'x 428, 431 (11th Cir. 2012) (professor who taught in a different department was not a similarly situated comparator); Welch v. Mercer Univ., 304 F. App'x 834, 837 (11th Cir. 2008) (two women who work in an entirely different academic department with entirely different standards for promotion not valid comparators).

**White Cannot Establish a Prima Facie Case of Age Discrimination**

White faces the same difficulty with regard to his age discrimination claim—there is no evidence of a younger police major who committed the same or even similar misconduct. White has not demonstrated that the County treated similarly situated, younger employees more favorably than he was treated. Absent this evidence, White cannot survive summary judgment. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present").

White also cannot establish that his age was the "but-for" cause of any adverse employment action. "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA

must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). The evidence on record does not permit a reasonable juror to conclude that White's age was the "but-for" cause of his demotion. A "but-for" cause requires a closer link than mere proximate causation; it requires that the **proscribed animus have a determinative influence on the employer's adverse decision**. Sims v. MVM, Inc., 704 F.3d 1327, 1335–36 (11th Cir. 2013) (holding that a reasonable juror could not conclude that discriminatory animus was a "but-for" cause of plaintiff's termination). White admitted in his deposition that the only basis for his age discrimination claim is younger employees being promoted—no one at MDPD ever said anything to him about his age. But several employees *older than White* were promoted during the same time frame. No reasonable juror could find that White established that his age was the "but-for" reason he was not promoted.

**There is no Evidence of Pretext or Discriminatory Intent**

Patterson lost trust in White's integrity as a result of the checks, which constitutes a legitimate business reason for terminating his employment. "[I]f the employer acted on its honestly-held belief that the employee had engaged in misconduct, even if it was mistaken, there is no discrimination." E. v. Clayton Cty., GA, 436 F. App'x 904, 912 (11th Cir. 2011) (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)); accord Damon v. Fleming Supermarkets Of Florida, Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct").

White has also failed to establish that the County's reasons for promoting other candidates is pretextual, and that discrimination is the real reason. White's subjective beliefs are insufficient to establish pretext. He cannot merely quarrel with the wisdom of the Department's reasons and he cannot prove pretext by arguing or showing that he was more qualified than the person who received the position. See Licausi v. Symantec Corp., 378 Fed. Appx. 964, 966 (11th Cir. 2010). White must show that the **disparities between** the promoted majors' **qualifications** and his own were of such **weight and significance** that no reasonable person, in the exercise of impartial judgment, could have chosen them over White. See Licausi v. Symantec Corp., 378 Fed. Appx. 964, 966 (11th Cir. 2010). There is simply no evidence to support such a determination.

"A reason is not pretext for discrimination unless it is shown **both** that the **reason was false**, and that **discrimination was the real reason**." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis added). Director Patterson and Director Perez were also both over 50 during the relevant time period. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (noting that plaintiff faced difficult burden where decision makers were all "well over age forty and within the class of persons protected by the ADEA"). Both Directors also promoted black applicants. White cannot survive summary judgment because he has failed to put forth any evidence from which a reasonable juror could conclude that MDPD intended to discriminate against him because of his age or race.

### D. WHITE DID NOT SUFFER A HOSTILE WORK ENVIRONMENT

White is precluded from raising a hostile work environment claim because he failed to exhaust this claim in his charges of discrimination, as discussed above. See Rodriguez v. Sec'y of Dep't of Veterans Affairs, 605 F. App'x 957, 958 (11th Cir. 2015) (finding that the district court did not err in granting summary judgment because plaintiff failed to exhaust her administrative remedies

with regard to her hostile work environment charge based on allegations of mocking because the judicial complaint of mocking was not like or related to the acts identified in her EEOC charge). Even if he had exhausted his remedies, White's hostile work environment claims would still fail. To establish a hostile work environment claim, White must show that: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability." McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008).

Since his employment was reinstated in 2014, White has not suffered any comments about his race. He has not received any negative evaluations or discipline. The only thing that has happened is that he did not get promoted once when he applied in 2015, and again in 2016. No reasonable person could find that the denial of a promotion constitutes severe and pervasive harassment sufficient to alter the terms and conditions of White's employment. See Green v. Northport, 599 F. App'x 894, 895 (11th Cir. 2015) (affirming summary judgment on hostile work environment claim despite plaintiff's claim that supervisor deferred several of his recommended promotions); Farid v. Postmaster Gen., 625 F. App'x 449, 452 (11th Cir. 2015) (finding that plaintiff failed to establish a prima facie case of a hostile work environment based on "sporadic and isolated" incidents).

E.  **WHITE WAS NOT RETALIATED AGAINST**

To successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the FCRA, White must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the

protected expression. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct. Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013). White cannot establish a retaliation claim because he did not engage in statutorily protected expression before he filed his 2014 Charge and White cannot establish a causal connection between his alleged protected expression and any adverse employment action. White acknowledges that no one in MDPD spoke about his EEOC charges at any time after he filed them.

Causation can be met by showing close temporal proximity between statutorily protected activity and the adverse employment action, but mere temporal proximity must be very close. Thomas v. Cooper Lighting Inc., 506 F.3d 1361 (11th Cir. 2007) (affirming summary judgment on retaliation claim because three month period without more does not rise to the level of very close). "Three and a half months is too long a delay to support a causation finding absent other evidence of retaliatory intent." Thomas v. CVS/Pharmacy, 336 Fed. Appx. 913, 915–16 (11th Cir. 2009). A nine month gap exists between White's 2014 Charge and Hanlon's March 2015 promotion to Chief. More than three months passed between White's 2015 Charge and the same promotion. And even long period of time elapsed between White's 2015 Charge and the June 2016 chief promotion. White cannot establish a prima facie case of retaliation under Title VII, the ADEA, or the FCRA.

The lack of temporal proximity is also fatal to White's § 1983 retaliation claim, which stems from an anonymous complaint he filed in June 2012 and briefly discussed with Patterson at an Ale House in 2012. White's § 1983 claim against Patterson is limited to acts that occurred on or after June 1, 2014. The two year gap between White's protected expression and any actionable retaliation claim is requires judgment in Patterson's favor as a matter of law.

White also cannot show that his alleged protected expression was the "but-for" cause of any adverse action. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). For the same reasons discussed above, White also cannot establish that the County's reasons for its actions were pretext for retaliation and that retaliation was the real reason. White's retaliation claims fail as a matter of law. Defendants are entitled to summary judgment in their favor on all of White's claims.

Dated:   August 3, 2019                                  Respectfully submitted,

                                                       ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

By: s/ Leona N. McFarlane
Leona N. McFarlane, Bar No. 16501
Assistant County Attorney
Leona.McFarlane@miamidade.gov
Phone:  (305) 375-5067
Fax:     (305) 375-5634
Counsel for Defendants

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on August 3, 2019 on all counsel or parties of record on the Service List below.

                                                  s/ Leona N. McFarlane
                                                    Assistant County Attorney

## SERVICE LIST

### CASE NO. 1:18-21862-CV-GAYLES/OTAZO-REYES

| **Counsel for Plaintiff** | **Counsel for Defendants** |
|---|---|
| Damian D. Daley, Esq.<br>DLF Attorneys<br>Parkside Corporate Center II<br>15150 N.W. 79th Ct., Suite 195<br>Miami Lakes, FL 33016<br>Tel: (786) 837-7733<br>Fax: (786) 837-7733<br>Email: ddaley@dlf-legal.com<br><br>Tarlesha W. Smith<br>TW Smith Law Group, LLC<br>1111 Park Centre Blvd., Suite 105G<br>Miami Gardens, FL 33169<br>Tel: (786) 219-1151<br>Fax: (786) 219-1152<br>Email: justice@tarleshasmith.com<br>tarlesha@comcast.net<br><br>Ria Chattergoon, Esq.<br>Ria Chaterrgoon P.A.<br>20900 NE 30th Avenue, Suite 800<br>Aventura, FL 33180<br>Tel: (305) 503-5131<br>Fax: (888) 270-5549<br>Email: ria@saenzanderson.com | Leona N. McFarlane<br>Miami-Dade County Attorney's Office<br>Stephen P. Clark Center<br>111 N.W. 1st Street, Suite 2810<br>Miami, Florida 33128<br>Tel: (305) 375-5151<br>Fax: (305) 375-5611<br>Email: Leona.McFarlane@miamidade.gov |