**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:18-21862-CIV-GAYLES**

TYRONE WHITE, JR.,
**Personal Representative of the**
**Estate of TYRONE WHITE,**

      **Plaintiff,**

v.

**MIAMI-DADE COUNTY and**
**J.D. PATTERSON, an individual,**

      **Defendants.**

_____/

**AMENDED ORDER**

      **THIS CAUSE** comes before the Court upon Defendants' Motion for Summary Judgment

("Defendants' Motion"), [ECF No. 70], and Plaintiff's Motion for Final Summary Judgment

("Plaintiff's Motion"). [ECF No. 72]. The Court has reviewed the Motions and the record and is

otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted, and

Plaintiff's Motion is denied.

**BACKGROUND**[1]

      Tyrone White ("Plaintiff")[2] brought this action against Defendants Miami-Dade County

(the "County") and former Miami-Dade County Police Department ("MDPD") Director J.D.

---

[1] The facts in this matter are gleaned from Defendants' Statement of Material Facts, [ECF No. 69], Plaintiff's
Statement of Material Facts in Support of His Motion for Summary Judgment, [ECF No. 71], Defendants' Statement
of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment, [ECF No. 78], Plaintiff's Reply to
Defendant's Response to Plaintiff's Statement of Facts in Support of Plaintiff's Motion for Summary Judgment, [ECF
No. 82], Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment and
Additional Disputed Facts, [ECF No. 90], Defendants' Reply in Support of Their Statement of Material Facts, [ECF
No. 92], and the exhibits attached thereto.
[2] After the parties fully briefed their Motions, Tyrone White ("White") died in a tragic car accident. Tyrone White,
Jr., as the Personal Representative of the Estate of Tyrone White, was substituted as Plaintiff in this action. *See* [ECF
No. 122]. For clarity, the Court refers to White as Plaintiff.

Patterson ("Patterson") (collectively "Defendants") alleging claims for race and age discrimination, hostile work environment, and retaliation. Plaintiff, a Black man, was over the age of 40 during the relevant time period.

## I.      Plaintiff's Tenure with MDPD and Community Involvement

Plaintiff began his employment with the County in 1983 as a MDPD police officer. Over the next 35 years, he served in the positions of officer, sergeant, lieutenant, captain, and major. In 2002, Plaintiff was promoted to the rank of major. Until his demotion in 2012, Plaintiff maintained an exemplary, discipline free employment record.

Over the years, Plaintiff led sports teams and organized athletic events on behalf of his fellow police officers and raised money to support the MDPD flag football team, the Police Olympics, and the Police Officers Athletic Trust ("POAT"). In conjunction with these activities, Plaintiff and MDPD Officers Kiriakos Beruty ("Beruty") and Charles Johnson ("Johnson") opened a bank account at the Dade County Federal Credit Union ("DCFCU") to deposit fundraising monies and to pay the expenses for the MDPD sports teams (the "Miami-Dade Team Account").

## II.     The Internal Affairs Investigation and White's Demotion, Termination, and Reinstatement.

### A.      The Checks

In 2010, Plaintiff received two checks from the accounts payable department of the South Florida Stadium LLC (the "Dolphins Stadium") in the amounts of $8,645.15 and $14,079.08. Each check was made payable to "Miami-Dade Police Department Football Coach: Tyrone White, Robbery Bureau." [ECF No. 71 ¶ 9]. Plaintiff deposited each check into the Miami-Dade Team Account.

### B.      The Montes Investigation

In early 2011, MDPD Internal Affairs ("IA") assigned Plaintiff and two other officers to review a case against Major Daniel Llanos-Montes ("Montes"). On September 22, 2011, Plaintiff and the two other officers concluded that the allegations against Montes should not be sustained. Plaintiff later raised concerns, in an email dated September 26, 2011, and in a conversation with Major Gary Schimminger ("Schimminger"), about the Montes investigation.[3] At this time, James Loftus ("Loftus") was the Director of MDPD.

### C.      IA Investigation into Plaintiff

On September 23, 2011, MDPD's Fiscal Administration Bureau discovered that two checks from Dolphins Stadium that were meant to pay for services rendered by the MDPD were issued to Plaintiff. Three days later, on September 26, 2011, MDPD's Chief Financial Officer Gustavo Knoepffler filed a complaint concerning the check discrepancy with MDPD's Professional Compliance Bureau which initiated an internal investigation into Plaintiff. Schimminger assigned Yolanda Jacinthe ("Jacinthe") to investigate.

On September 27, 2011, an accounts payable specialist for Dolphins Stadium acknowledged that the checks had been issued to Plaintiff in error and should have been made payable to the "Miami-Dade Police Department Fiscal Administration Bureau." [ECF No. 71 ¶ 15]. Dolphins Stadium did not request repayment. Director Loftus then directed Jacinthe to move forward with a criminal investigation into Plaintiff. On October 20, 2011, Director Loftus accused Plaintiff of misappropriating the money received from Dolphins Stadium and demoted him.

---

[3] Plaintiff was concerned that (1) Montes should be referred to as a major in the report on the investigation, rather than lieutenant and (2) it was improper to have an internal affairs complaint against an officer without a "complainant." [ECF No. 71 ¶¶ 10-11]; [ECF No. 78 ¶¶ 10-11]; [ECF No. 82 ¶ 11]. Plaintiff also testified in his deposition that he had a "heated" conversation with Gary Schimminger about these concerns and that Loftus was aware of the exchange. [ECF No. 71-1].

On November 20, 2012, Jacinthe submitted her final investigative report to the MDPD Disposition Panel.[4] The Report contained nineteen allegations against Plaintiff, five allegations against Beruty, and one against Geneva Johnson ("Johnson"), Plaintiff's secretary. The Disposition Panel sustained five of the nineteen allegations against Plaintiff.[5] On April 22, 2013, the MDPD issued a Disciplinary Action Report ("DAR") based on the Disposition Panel's sustained allegations. The DAR made several findings, including that:

> [I]n the period from February 2009 through March 2010, there were no checks deposited that exceeded $500 and all checks were for even rounded amounts. The only two exceptions were the checks by [Dolphins] Stadium in the amounts of $8,645.15 and $14,079.08.

> As the Coach of the football team, you have coordinated numerous fundraising activities and handled donations from individuals and organizations, to include [Dolphins] Stadium. The check amounts from [Dolphins] Stadium, coupled with your tenure as a seasoned police administrator, and your fundraising experience, should have altered you to a possible mistake.

[ECF No. 71-10].[6] On April 29, 2013, Plaintiff's supervisor, Major Reindaldo Valdes, submitted a memorandum to Chief Juan Santana recommending Plaintiff's dismissal. Chief Santana signed his concurrence with the recommendation on May 6, 2013. In June of 2013, Plaintiff and Director Patterson[7] attempted to settle the matter, but to no avail. Patterson signed his concurrence with the recommendation for termination on August 26, 2013. Patterson testified that decided to terminate Plaintiff's employment because he did not trust Plaintiff's integrity after the incident. Plaintiff's employment was terminated on August 28, 2013.

---

[4] The Disposition Panel included Chairperson Major Hernan M. Organvidez and panel members Major Julie Miller and Chief Randy Heller.

[5] The Disposition Panel did not sustain any of the allegations against Beruty. Beruty, who is white, was relieved of duty on October 21, 2011. He was eventually reinstated.

[6] On June 18, 2022, the Public Corruption Unit of the Miami-Dade County State Attorney's Office filed its Close-Out Memo finding that although Plaintiff "did not disclose the windfall" from the two checks, it could not establish that he had a criminal intent. [ECF No. 71-8].

[7] Director Loftus retired on October 1, 2012. Patterson became MDPD Director on February 1, 2013. Patterson retired on February 1, 2016.

Plaintiff requested an arbitration hearing to appeal his termination. On August 8, 2014, the Arbitrator issued a Decision and Award ordering MDPD to reinstate Plaintiff to his former position as captain and to award Plaintiff back pay, less the total of the two disputed checks. The Arbitrator, noting that he had no authority to restore Plaintiff to his position as major, recommended that MDPD make a good faith effort to restore Plaintiff to major should a vacancy become available. Plaintiff returned to work at the rank of captain on January 1, 2012.[8]

### III.    Plaintiff's Anonymous Complaint Against POAT

On June 8, 2012, Plaintiff prepared an anonymous letter complaining about MDPD Officers assigned to the POAT being paid with taxpayer funds (the "POAT Complaint"). The anonymous POAT Complaint made its way to local news reporter, who placed it on the Leo Affairs website. The POAT Complaint was also sent to the Miami-Dade County Office of the Inspector General, who forwarded it to then Mayor of Miami-Dade County, Carlos Gimenez, and Genaro Iglesias, Chief of Staff for the Mayor. Sometime in the beginning of 2013, Plaintiff met with Patterson and admitted to Patterson that he authored the anonymous POAT Complaint. Three years later, on March 24, 2015, a member of the media informed Patterson that it was again investigating Plaintiff's allegations in the POAT Complaint.

### IV.    Plaintiff's Applications for Promotion

Following his return to MDPD, Plaintiff applied for two promotions.[9] On December 24, 2014, Plaintiff applied for the position of police division chief. Plaintiff received a first and second interview for the position, but Patterson ultimately awarded the position to Pat Hanlon ("Hanlon")

---

[8] Plaintiff argues that he was treated differently than Hispanic and younger employees who engaged in similar conduct. In particular, Plaintiff references the 2008 "Panama Case", in which several officers used the MDPD electronic mail server for uses other than MDPD business, accepted gratuities, failed to report outside income, failed to reimburse the County for roaming expenses incurred on a cellular phone, and were accused of conduct unbecoming, and were not demoted or terminated. [ECF No. 71 ¶61].

[9] On April 25, 2012, after his demotion and during the IA investigation against him, Plaintiff applied for a police division chief position. Loftus was the decision-maker for this position and promoted Juan Perez, a Hispanic man, from captain to chief. [ECF No. 71 ¶ 45].

on March 24, 2015. Hanlon, a white man, had served as a captain and a major with MDPD and had started with MDPD as a police officer in 1983.[10]

On February 1, 2016, Juan J. Perez ("Director Perez") became MDPD Director. After Director Perez's appointment, the police chief application process typically consisted of the following: an advertisement; applicants applying online and submitting copies of their resume to an executive staff member in the director's office; assistant directors reviewing applications and resumes and selecting applicants to interview; and, after those interviews, making recommendations for a secondary interview and final determination.[11]

On April 18, 2016, MDPD posted an opening for police division chief. Forty-two (42) applicants, including Plaintiff, applied. Assistant Director Stephanie Daniels, Assistant Director Alfredo Ramirez, and Hanlon, then an acting assistant director, reviewed the 42 resumes and selected 12 applicants for an interview. Plaintiff did not receive an interview. Six of the applicants then received a final interview with Director Perez. On May 31, 2016, Director Perez recommended four applicants for promotion to chief: Major Richard Amion ("Amion"), Major Andrianne Byrd ("Byrd"), Major Ariel Artime ("Artime"), and Major Mirtha Ramos ("Ramos"). Amion and Byrd are both Black.[12] Director Perez testified that his decision to promote these four individuals was not based on race or age and that he was looking for highly qualified people who were in line with his vision for the department. [ECF No. 69 ¶ 49].

---

[10] Plaintiff also began his tenure with MDPD in 1984. [ECF No. 69-9]. Though Plaintiff states, without support, that Hanlon is believed to be younger than Plaintiff, the record reflects otherwise. *See Id.* at 24 (showing Hanlon graduated from high school in 1978).

[11] Director Perez periodically used waivers to promote individuals. [ECF No. 69-9 p. 9 and ECF No. 90 ¶ 43].

[12] During his tenure, Patterson also promoted the following individuals to major: then-Captain Ramos, Lieutenant Ricky Carter ("Carter"), and Lieutenant Eduardo Caneva. Carter is Black. He also promoted four individuals to chief, including Delma K. Noel-Pratt, who is Black. Director Perez promoted seven individuals to major, including Lieutenant Samual Bronson ("Bronson"), who is Black. Director Perez also promoted Stephanie Daniels, who is Black, from major to assistant director.

## V.        EEOC Charges of Discrimination

On June 13, 2014, Plaintiff filed Charge of Discrimination No. 510-2014-03955 (the "First Charge"). [ECF No. 69-3 at 218-223]. In the First Charge, Plaintiff indicates that MDPD first discriminated against him on August 29, 2013, and checked the boxes for discrimination based on race, national origin, age, and retaliation. *Id.* In his description of the discrimination, Plaintiff focuses on his demotion and termination following the IA investigation.

On December 4, 2014, Plaintiff filed Charge of Discrimination No. 510-2015-00973 (the "Second Charge"). *Id.* at 224. In the Second Charge, Plaintiff indicates that MDPD first discriminated against him on August 9, 2014, and checked the boxes for discrimination based on race, sex, retaliation, and age. In his description of the discrimination, Plaintiff alleged that MDPD refused to implement the arbitration award because he would not sign waivers of employment related claims.

On December 7, 2016, Plaintiff filed Charge of Discrimination No. 510-2017-03970 (the "Third Charge"). *Id.* at 226. In the Third Charge, Plaintiff does not indicate when he first experienced discrimination and checks the boxes for race, sex, retaliation, and age. In his description of the discrimination, he alleged that MDPD refused to implement the arbitration award and that he was retaliated against when he applied for the position of chief on April 20, 2016. *Id.*

## VI.    Procedural History

In the Third Amended Complaint, Plaintiff asserts claims against the County for race discrimination, in violation of Title VII and the Florida Civil Rights Act ("FCRA") (Counts I and IV); age discrimination, in violation of the FCRA and the Age Discrimination in Employment Act ("ADEA") (Counts V and VII); hostile work environment, in violation of Title VII (Count II); and

retaliation, in violation of Title VII, the FCRA, the ADEA, and 42 U.S.C. § 1983[13] (Counts III, VI, VIII, and XI). [ECF No. 54]. Plaintiff also asserts § 1983 claims against Patterson for race and age discrimination (Count IX) and First Amendment Retaliation (Count X). *Id.* The parties have now filed cross motions for summary judgment as to all counts.

## **STANDARD OF REVIEW**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

---

[13] Plaintiff brings his § 1983 retaliation claim against the County "pursuant to the Equal Protection Clause," alleging he "has a constitutional right to be free from discrimination and retaliation [and] is a member of a protected class of Black citizens and citizens over 50 years of age." [ECF No. 54 ¶¶ 187, 188].

## ANALYSIS

**I.    Timeliness**

Plaintiff's claims are all limited in scope by the applicable statutes of limitations and timing requirements for EEOC charges.

### A.    Four Year Statute of Limitations

Florida's four-year statute of limitations for statutory causes of action applies to Plaintiff's FCRA and § 1983 claims. *See Abram-Adams v. Citigroup,* 491 F. App'x 972, 975 (11th Cir. 2012) (holding that four-year statute of limitations applies to FCRA claims); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (holding that four-year statute of limitations applies to § 1983 claims). Plaintiff filed his initial Complaint against the County and Director Loftus[14] on December 27, 2017. [ECF No. 1-1]. Accordingly, for Plaintiff's FCRA claims and § 1983 claims against the County (Counts IV, V, VI, XI), the Court only considers alleged acts of discrimination that occurred on or after December 27, 2013: the March 2015 and June 2016 failures to promote. Plaintiff named Patterson as a Defendant for the first time on June 1, 2018, when he filed his Amended Complaint. [ECF No. 11]. As a result, for Plaintiff's § 1983 claims against Patterson (Counts IX and X), the Court only considers alleged acts of discrimination that occurred between June 1, 2014, and February 1, 2016[15]:  the March 2015 failure to promote.

### B.    Timing of the EEOC Charges

Title VII and the ADEA each require a plaintiff to file a charge of discrimination with the EEOC before filing suit in district court. *See Abram v. Fulton County Government*, 598 F. App'x. 672 (11th Cir. 2015). In deferral states, such as Florida, a plaintiff must file a charge of discrimination with the EEOC "within 300 days after the alleged unlawful employment practice

---

[14] Plaintiff voluntarily dismissed Director Loftus as a Defendant on June 1, 2018. [ECF No. 9].
[15] Patterson retired on February 1, 2016. [ECF No. 69 ¶ 10].

occurred. . . ." 42 U.S.C. § 2000e-5(e)(1). In addition, FCRA claims are subject to a 365-day statute of limitations. *See Collins v. Miami-Dade Cty.*, 361 F. Supp. 2d 1362, 1378 (S.D. Fla. 2005). "A claim is time barred if it is not filed within these time limits." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Plaintiff filed the First Charge on June 13, 2014. Therefore, his only actionable claims under Title VII and the ADEA for the First Charge are those that arose on or after August 17, 2013 (300 days before June 13, 2014). Plaintiff's only actionable claims under the FCRA are those that arose after June 13, 2013; however, as set forth above, because of the 4-year statute of limitations, he's limited to FCRA claims that arose after December 27, 2013. Therefore, the only actionable adverse employment action under the First Charge is Plaintiff's August 29, 2013, termination. His claims based on his demotion are time-barred.

Plaintiff filed the Second Charge on December 4, 2014. Therefore, his only actionable claims under Title VII and the ADEA for the Second Charge are those that arose on or after February 7, 2014 (300 days before December 4, 2014). Therefore, Plaintiff's only actionable claims under the FCRA for the Second Charge are those that arose on or after December 4, 2013. Plaintiff was not in the workplace from August 29, 2013, the date of his termination, through September 1, 2014, when he was reinstated. Therefore, Plaintiff's claims under the Second Charge are limited to acts occurring between September 1, 2014, and December 4, 2014. There is no evidence of any actionable claims during this time. Rather, the Second Charge is focused on the County's purported refusal to implement the Arbitration Award.[16]

---

[16] To the extent Plaintiff is challenging any aspect of the Arbitration Award, he is precluded from doing so in this Court. *See City of Miami Springs v. Barad*, 448 So. 2d 510, 511 (Fla. 3d DCA 1983) (holding that where a plaintiff has participated in administrative review procedures, he may appeal to the appropriate state circuit court but may not file an independent action collaterally attacking the determination of the review board).

Plaintiff filed the Third Charge on December 7, 2016. Therefore, his only actionable claims under Title VII and the ADEA for the Third Charge are those that arose on or after February 11, 2016; and his only actionable claims under the FCRA for the Third Charge arose after December 7, 2015. Therefore, the only actionable adverse employment action under the Third Charge is MDPD's decision not to promote Plaintiff to Police Division Chief in April 2016.[17]

### C.    Continuing Violations Doctrine

Plaintiff argues that his claims are not time-barred under the continuing violations doctrine. The continuing violations doctrine permits an extension of the statutory limitations period where the discriminatory acts constitute a "continuing violation."  *See Morgan,* 536 U.S. at 120; *Abram,* 598 F. App'x. at 674-75. However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The purpose of the doctrine "is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Rager v. Augustine*, 760 F. App'x 947, 951 (11th Cir. 2019); *See also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221-22 (11th Cir. 2001) ("The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.") (internal quotation omitted).

This Court's task, therefore, is to determine whether each of Defendants' alleged acts are discreet occurrences, such that majority of them are time barred, or are part of a continuing violation, such that Plaintiff's claims dating back to 2011 may proceed. In *Morgan*, the Supreme Court distinguished between discrete acts of discrimination (such as termination, failure to hire,

---

[17] Based on these limitations, MDPD's decision to promote Hanlon over Plaintiff in 2015 is not actionable under Title VII, the ADEA, or the FCRA.

transfers, or failures to promote) and hostile-work environment claims. *Id.* It held that "the statue precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. . . . and that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. Accordingly, courts have found the continuing violations doctrine inapplicable in situations where the plaintiff does not raise a hostile-work environment claim and bases the claim on discrete acts of alleged discrimination. *See Abram*, 598 F. App'x. at 676 (continuing violations doctrine inapplicable where plaintiff did not raise a hostile-work-environment claim and all of her claims raised specific instances of the defendant's failure to grant her requested accommodations); *Ledbetter v. Goodyear Tire and Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005) (finding that pay claims are discreet discriminatory acts and therefore must fall within statutory time frame); *Varnado v. Mukasey*, No. 08-61331, 2010 WL 2196263, at *2 (S.D. Fla. June 1, 2010) (holding that biased evaluations, biased counseling, assignment of a substandard vehicle, suspension of cell phone usage, placement on sick leave, placement on performance improvement plan, and failure to promote were all discreet acts of discrimination and not part of a continuing violation).

As detailed below, Plaintiff has not established a hostile work environment claim. *See infra* § III. Moreover, there is nothing in the record to suggest that any of the alleged discriminatory acts were not apparent at the time they occurred. Therefore, the Court finds that the continuing violations doctrine does not apply to Plaintiff's claims.

The chart below summarizes the Court's findings as to each adverse employment action and the relevant statute.

| Action↓Claim→ | Title VII | FCRA | ADEA | 1983 (County) | 1983 (Patterson) |
|---|---|---|---|---|---|
| Demotion | Untimely | Untimely | Untimely | Untimely | Untimely |
| Termination | Timely | Timely | Timely | Untimely | Untimely |
| Failure Promote 2015 | Untimely | Untimely | Untimely | Timely | Timely |
| Failure Promote 2016 | Timely | Timely | Timely | Timely | Not Actionable because of retirement |

## II.    Plaintiff's Discrimination Claims Based on Race[18]

Plaintiff contends that the County terminated, and later failed to promote, him because of his race.[19] Title VII, the Equal Protection Clause of the Fourteenth Amendment, and the FCRA all prohibit discrimination on the basis of race and gender. *See* 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1983; Fla. Stat. § 760.10 *et seq.* The Court applies the same legal analysis to Title VII, § 1983, and FCRA claims that are based on the same set of facts. *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (Title VII and § 1983); *Hampton v. City of South Miami*, 186 F. App'x. 967 n. 2 (11th Cir. 2006) (Title VII and FCRA).

A plaintiff may pursue race discrimination claims under single-motive or mixed-motive theories. *Quigg*, 814 F.3d at 1235. A case brought pursuant to a single-motive theory is one "in which the employee alleges that unlawful bias was 'the true reason' for an adverse employment action." *Phillips v. Legacy Cabinets,* 87 F. 4th 1313, 1321 (11th Cir. 2023) (quoting *Quigg*, 814 F.3d at 1235)). A case brought pursuant to a mixed-motive theory is one "in which [a plaintiff] alleges that bias was simply *a* motivating factor for the adverse action, even though other factors also motivated the practice[.]" *Id.* (internal quotation omitted) (emphasis added). Mixed-motive

---

[18] The Court finds that Plaintiff exhausted his administrative remedies for his claims based on race discrimination. All three charges sufficiently allege that he was discriminated against based on his race.
[19] As detailed above, Plaintiff's claims that he was demoted because of his race are time barred.

and single-motive theories of discrimination are not "distinct causes of action" but rather "serve as alternative causation standards for proving discrimination." *Quigg*, 814 F.3d at 1235 n.4. "At summary judgment, the ultimate question for all Title VII intentional discrimination claims is the normal standard: whether a reasonable jury could infer that the reason for the adverse employment action was illegal discrimination." *Buckhanon v. Opelika Housing Authority*, No. 22-13689, 2024 WL 887038, at * 1 (11th Cir. 2024) (citing *Tynes v. Florida Dep't of Juv. Just.*, 88 F. 4th 939, 946-47 (11th Cir. 2023)). Plaintiff argues a mixed-motive theory with respect to his termination and a single-motive theory with respect to two failures to promote. *See* [ECF Nos. 72 at 4; 91 at 15-16].

### A.    Mixed-Motive Theory for 2012 Termination

Unlike claims pursued under a single-motive theory, "claims brought under a mixed-motive theory require the employee to show only that illegal bias . . . was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Phillips*, 87 F.4th at 1327. A plaintiff can establish this requirement with direct or circumstantial evidence. *Id.* "But, because the mixed-motive theory does not depend on proof of a single, true reason for an adverse action, an employee relying on circumstantial evidence is not required to satisfy the *McDonnell Douglas* burden-shifting framework. Instead, [a plaintiff] can survive summary judgment simply by producing evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff and; (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Id.* (emphasis in original). "If the employee can show that an unlawful reason was a motivating factor, then the burden shifts to the employer to show that it would have made the same decision in the absence of the impermissible motivating factor." *Bartels v. Southern Motors of Savannah, Inc.*, 681 F. App'x 834, 840 (11th Cir. 2017) (citing *Quigg*, 814 F.3d at 1242).

The Court finds that Plaintiff failed to present "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [his race] was a motivating factor for" his termination. *Williams v. Florida Atlantic University*, 728 F. App'x 996, 999 (11th Cir. 2018). Though Plaintiff argues that Defendants treated white and Hispanic officers more favorably in conjunction with IA investigations,[20] Defendants have clearly established that they would have terminated him in the absence of the alleged impermissible motivating factor. Defendants believed that Plaintiff had improperly deposited the checks, and, at the very least, should have realized that the checks were not meant for him. In this context, it is immaterial that Plaintiff did not actually commit a crime and was exonerated by the Arbitrator. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Id.* (quoting *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)); *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Accordingly, Plaintiff has failed to establish that he was terminated based on his race.

### B.    Failure to Promote under a Single Motive Theory

Plaintiff claims that the County failed to promote him to Chief in both 2015 and 2016 based on his race. As detailed above, Plaintiff's 2015 failure to promote claims under Title VII, the ADEA, and the FCRA are time-barred. While his § 1983 claim against the County for the 2015 failure to promote is not time-barred, the record does not support a finding that the County had an official policy or unofficial custom or practice of failing to promote black employees. *See Monell*

---

[20] Plaintiff contends that race was a motivating factor in his termination because Defendants sustained no charges against Beruty, a white officer, in the IA investigation. Notably, however, the checks were issued in White's, not Beruty's, name, and Jacinthe's final investigative report only contained five allegations against Beruty as opposed to nineteen against White. So too with the Hispanic officers in the Panama Case. While the same reason for discipline was listed for the Hispanic officers, none of those officers received and deposited checks that were meant for MDPD.

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality can only be liable when an official policy or unofficial custom or practice causes a constitutional violation.). Indeed, the record reflects that the County promoted several Black employees to major and chief.[21] Therefore, the Court will only consider Plaintiff's claim that the County failed to promote him in 2016 based on his race in violation of Title VII and the FCRA.

"To prevail under a single motive claim based on circumstantial evidence, a plaintiff must either satisfy the three-step burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or [present a] convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker . . . ." *Campbell v. Mayo Clinic*, No. 23-10966, 2024 WL 713921, at *1 (11th Cir. 2024) (internal quotation omitted).

---

[21] In his Motion for Summary Judgment, Plaintiff appears to argue that MDPD had a policy or custom of retaliating against officers for exercising their First Amendment Rights. While Count X of Plaintiff's Third Amended Complaint alleges that Patterson retaliated against Plaintiff for exercising his first amendment rights, Plaintiff's sole § 1983 claim against the County (Count XI) alleges that the County discriminated and retaliated against him based on his race and age in violation of the Equal Protection Clause. [ECF No. 54 ¶¶ 187-88]. Accordingly, the Court does not consider Plaintiff's § 1983 claim against the County on Plaintiff's exercise of his First Amendment rights. *See Amerijet Intern., Inc. v. Miami-Dade County, Fla.*, 7 F. Supp. 3d 1231, 1236 (S.D. Fla. 2014) ("A plaintiff may not raise a new claim at the summary judgment stage because the opposing party has no notice of the newly-raised claim based on the allegations set forth in the operative complaint.") (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). However, even if Plaintiff had properly raised this claim, the record does not establish that the County had a custom or policy to discriminate or retaliate against employees for exercising their First Amendment Rights. Rather, Plaintiff focuses entirely on his own experience. *See Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1312 (11th Cir. 2011) (holding that a plaintiff's "own experience . . . is, at most, proof of a single incident of unconstitutional activity. That proof is not sufficient to impose liability under section 1983") (internal quotations and citations omitted); *Reeves v. Columbus*, No. 23-11463, 2024 WL 33903, at *3 (11th Cir. Jan. 3, 2024) (holding that plaintiff's "unsubstantiated assertions that [defendant] had a custom of more strictly punishing Black officers do not on their own create a genuine issue for the jury as to whether her suspension was racially motivated.").

### 1.      McDonnell Douglas Single Motive Framework

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant/employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant can do so, the burden shifts back to the plaintiff to show that the defendant's proffered legitimate reason was merely pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-805. The plaintiff must ultimately show that the "true reason" for the employer's adverse employment action was to discriminate against him. *Quigg*, 814 F.3d at 1237 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-53 (1981)).

To establish a prima facie case for a failure to promote, Plaintiff must establish "that he (1) belonged to a protected class; (2) was qualified for and applied for a position that the employer was seeking to fill, (3) was rejected despite his qualifications, and (4) that the position was filled with an individual outside the protected class." *Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023) (internal quotations omitted). "The burden of proving that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (internal quotation omitted). It is undisputed that Plaintiff belonged to a protected class and was qualified for the position of chief. However, with respect to the 2016 Promotion, Plaintiff fails to establish that the position was filled with individuals outside protected class. Indeed, Director Perez filled two of the four available positions for chief with Black applicants.

Even if Plaintiff could establish a prima facie case, the County has established a legitimate, non-discriminatory reason for promoting individuals other than Plaintiff to chief in 2016. Forty-two applicants applied for four positions. Director Perez promoted Amion, Bryd, Artime, and Ramos because he believed they were qualified, independent thinking individuals who were in line with his vision for MDPD. This is a legitimate, non-discriminatory reason. *See Chapman*, 229 F.3d

at 1034 ("A subjective reason is a legally sufficient, legitimate, non-discriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."). And, Plaintiff has not established that the County's reasons for choosing the other individuals was pretextual. The record reflects that the four individuals who were chosen were just a qualified as Plaintiff. Moreover, two of the individuals selected for chief were Black. As a result, Plaintiff simply cannot establish that the County failed to promote him because of his race.

### 2.      Convincing Mosaic

Plaintiff may also survive summary judgment if he establishes a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotations omitted). "A convincing mosaic may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements [ ], and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City,* 934 F.3d 1169, 1185 (11th Cir. 2019). Plaintiff has not established a "convincing mosaic." The record is devoid of evidence that the County intended to discriminate against Plaintiff based on his race. There are no ambiguous statements or systemically better treatment of similarly situated employees. Indeed, two of the four promoted individuals are, like Plaintiff, Black. Finally, as detailed above, Plaintiff fails to establish that the County's reasons for promoting Amion, Bryd, Artime, and Ramos were pretextual. Accordingly, the Court finds no genuine issues of material fact as to Plaintiff's race discrimination claims and finds that the County is entitled to judgment as a matter of law on Counts I, IV, VI, and IX.

III.    **Age Discrimination Claim**

Plaintiff also claims that Defendants demoted, terminated, and later failed to promote him because of his age.

A.      **EEOC Charges**

A plaintiff's employment discrimination complaint is generally limited by the allegations contained in his charge of discrimination and the scope of the EEOC investigation "which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004). Importantly, the Eleventh Circuit has noted that the scope of a charge of discrimination should not be strictly interpreted, and it is "extremely reluctant to allow procedural technicalities to bar discrimination claims." *Kelly v. Dun & Bradstreet,* 557 F. App'x 896, 899 (11th Cir. 2014) (internal quotation omitted). While claims that "amplify, clarify, or more clearly focus" the allegations in a charge of discrimination are permitted, allegations of new acts of discrimination "are inappropriate" for a post-charge judicial complaint. *See Gregory,* 355 F.3d at 1279-80 (internal quotations omitted).

Although the 2015 and 2016 Charges of Discrimination adequately allege age discrimination, the Court finds that the 2014 Charge does not. Aside from stating that he is over the age of 40, Plaintiff does not allege that he was demoted or terminated because of his age or that other employees who were younger than him received better treatment. Accordingly, the Court finds that Plaintiff did not exhaust his administrative remedies with respect to his ADEA claim based on his demotion and termination. The Court will only consider Plaintiff's ADEA claim with respect to the two alleged failures to promote.[22]

---

[22] The Court notes that even if Plaintiff had exhausted his administrative remedies with respect to the demotion and termination, the record is devoid of evidence that Plaintiff's age was the but-for cause of his demotion and termination.

**B.**     **Plaintiff Fails to Establish Age as a But-For Cause**

To establish a prima facie case of age discrimination in a refusal to promote claim, Plaintiff must prove "(1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought . . . ; and (4) that he was qualified to do the job for which he was rejected." *Rodriguez v. Sec'y, U.S. Dept. of Homeland Sec.*, 608 F. App'x 717, 719-20 (11th Cir. 2015). Plaintiff must also show that age was the "but-for" cause of the defendant's adverse employment decision. *Gross v. FBL Financial Serv., Inc.*, 557 U.S. 167, 178 (2009) (holding that the ADEA does not authorize mixed-motive claims).

If a plaintiff can establish his prima face case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its decision not to promote the plaintiff. *Rodriguez*, 608 F. App'x at 720. "If the employer meets its burden, the plaintiff must then demonstrate that the defendant's proffered reason for failing to promote the plaintiff was pretextual." *Id.*

With respect to the 2015 failure to promote, Plaintiff fails to establish a prima facie case of age discrimination. The record reflects that Hanlon was nearly the same age as Plaintiff and was similarly qualified. So too with respect to the 2016 failure to promote. Plaintiff alleges, "upon information and belief" that everyone promoted was younger than him, but the record does not reflect the actual ages of the individuals who were promoted. Accordingly, Plaintiff has not met his burden to show that a substantially younger person filled the position he sought. Moreover, the record is devoid of any evidence that age was the but-for-cause of Defendants' failure to promote Plaintiff in 2015 or 2016. *See Gross*, 557 U.S. at 177-78. Accordingly, the Court finds no genuine issues of material fact as to Plaintiff's age discrimination claims and finds that Defendants are entitled to judgment as a matter of law on Counts V, VII, and IX.

## IV.    Retaliation Claims Against the County[23]

Plaintiff brings claims for retaliation against the County under Title VII, the FCRA, the ADEA, and § 1983.[24] These claims, all based on circumstantial evidence, are evaluated using the *McDonnell Douglas* framework or the convincing mosaic analysis. *See Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1338 (11th Cir. 2023).[25] Under the *McDonnell Douglas* framework, "a plaintiff must first make out a prima facie case by showing (1) [he] engaged in a statutorily protected activity, (2) [he] experienced an adverse employment action, and (3) causation." *Id.* Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* If the employer meets its burden, "the plaintiff must show that the proffered reasons were pretext and the employer's real reason was retaliation." *Id.* Under the convincing mosaic analysis, a plaintiff will survive summary judgment if he presents evidence "that raises a reasonable inference" of retaliation. *Id.* at 1342. Retaliation claims require "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiff contends he engaged in statutorily protected activity by (1) refusing to infringe on Montes' rights; (2) refusing to admit to a crime he did not commit; (3) the POAT Complaint; (4) filing his grievance; (5) his arbitration; (6) filing charges of discrimination with the EEOC; and (7) filing this lawsuit. To establish a retaliation claim, "the protected activity [must] involve the assertion of rights encompassed by the statute." *Jimenez v. Wellstar Health System*, 596 F.3d 1304,

---

[23] As detailed above, Plaintiff's claims with respect to his demotion are time barred, and Plaintiff failed to exhaust his administrative remedies for his demotion and termination claims under ADEA.

[24] As detailed above, Plaintiff's § 1983 claim against the County is based on the Equal Protection Clause and not First Amendment Retaliation. *See supra* n.21.

[25] In his response to Defendants' Motion for Summary Judgment, Plaintiff claims that Defendants did not "confront" his § 1983 retaliation claim against the County in their Motion for Summary Judgment. [ECF No. 91 at 8]. The Court disagrees. In their Motion, Defendants argue that (1) the scope of Plaintiff's § 1983 claim against the County is limited by the statute of limitations; (2) the Court applies the same standard to § 1983 claims as Title VII claims, including claims for retaliation based on race; and (3) the lack of temporal proximity is fatal to White's § 1983 claim. *See* [ECF No. 70 at 5, 11, 17].

1311 (11th Cir. 2010). Plaintiff's refusal to infringe on Montes' employment rights as a police officer, refusal to admit to misappropriating the checks, submission of the POAT Complaint, filing his grievance after his termination, and participation in the arbitration are not related to rights under Title VII, the FCRA, the ADEA, or the Equal Protection Clause. And, Plaintiff suffered no adverse employment action after the filing of this lawsuit. Accordingly, the Court only considers Plaintiff's three discrimination charges with the EEOC.

Plaintiff has established that he engaged in protected activity via the filing of his EEOC Charges and that he suffered an adverse employment action each time he was not promoted. However, Plaintiff has not established a causal connection between the protected activity and the promotions. Plaintiff filed his First Charge on June 13, 2014, nine months before his first missed promotion and almost two years before his second missed promotion. Plaintiff filed his Second Charge on December 4, 2014, four months before his first missed promotion and nearly 18 months before the second missed promotion. Finally, Plaintiff filed his Third Charge on December 7, 2016, after the first missed promotion and almost six months before the second missed promotion. The Court finds that the temporal proximity between the EEOC Charges and the missed promotions does not support a finding of causation. *See Thomas v. CVS Pharmacy*, 336 F. App'x 913, 915-16 (11th Cir. 2009) (finding that "[t]hree and a half months is too long a delay to support a causation finding absent other evidence of retaliatory intent[.]"). Plaintiff presents no other basis supporting causation. To establish a causal connection, Plaintiff must establish that his "protected activity was a but-for cause of the alleged adverse action." *Nassar*, 570 U.S. at 362. "Stated another way, a plaintiff must prove that had [he] not complained, [he] would not have [suffered the adverse employment action]." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). There is nothing in the record to suggest that Plaintiff's EEOC charges were the but-for-cause of Director Perez or Director Patterson's decisions to promote other people to the positions of chief. Plaintiff,

therefore, failed to establish a prima facie case of retaliation against the County. Thus, the Court finds no genuine issues of material fact as to Plaintiff's retaliation claims against the County and finds that Defendants are entitled to judgment as a matter of law on Counts III, VI, VIII, and XI.

**V.      1983 Claims Against Patterson**

Plaintiff raises two § 1983 claims against Patterson: the first for race and age discrimination (Count IX) and the second for First Amendment retaliation (Count X). Plaintiff's race and age discrimination claims against Patterson fail for the same reasons his claims against the County fail. Therefore, the Court only addresses Plaintiff's retaliation claim against Patterson. As Plaintiff's claims relating to his demotion and termination are time barred, the Court only considers whether Patterson failed to promote Plaintiff in retaliation for the POAT Complaint. Patterson argues that he is entitled to qualified immunity as to this claim and that, in any event, Plaintiff fails to establish his claim.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardway v. Dickerson*, 735 F. App'x 1003, 1005 (11th Cir. 2018). "To receive qualified immunity, the government official must show that he was acting within the scope of his discretionary authority at the time the incident occurred." *Id.* It is undisputed that Patterson was acting within his discretionary authority when he promoted Hanlon over Plaintiff. Therefore, the burden shifts to Plaintiff to show that qualified immunity is inappropriate. *Id.* To prove that Patterson is not entitled to qualified immunity, Plaintiff must show (1) Patterson violated a constitutional right and (2) "that right was clearly established." *Id.* "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted).

A.      Patterson Did Not Violate a Constitutional Right

"For a public employee to establish a prima facie case of First Amendment retaliation, [he] must show: 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that [his] interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action" *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005). "If the plaintiff can establish these elements, the defendant is given the opportunity to rebut the presumption of retaliation by proving that it would have made the same decision even if the speech at issue had never taken place." *Id.*

There is little in the record to suggest that Plaintiff's POAT Complaint played any role in Patterson's decision to promote Hanlon over Plaintiff. First, Patterson's initial discovery that Plaintiff was the author of the POAT Complaint was approximately 2 years before the promotion. This is simply too long a period of time to support any causal inference. And, while Patterson received an email about a possible new media inquiry into POAT a few weeks before the promotion, this, without more, does not establish that the POAT Complaint played a substantial role in Patterson's decision-making. Patterson promoted Hanlon over Plaintiff and several other candidates, and Hanlon's credentials were equally as impressive as Plaintiff's.

However, even if the record did support a finding that Patterson considered the POAT Complaint in promoting Hanlon over Plaintiff, the Court finds that Patterson would have made the same decision in any event. Patterson testified that he did not trust Plaintiff's integrity and chose to promote an equally qualified applicant. It was within his discretion to choose a candidate he trusted. *See Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir. 2000) (holding that a defendant is entitled to qualified immunity where the record shows that defendant was "motivated, *at least in part*, by lawful considerations."). Therefore, the Court finds that Plaintiff fails to

establish a constitutional violation, and Patterson is thus entitled to qualified immunity on Count X.

### B.   Clearly Established Law

Even if Plaintiff had established a constitutional violation, the Court finds that the law is not so clearly established such that Patterson would have understood what he was doing violated Plaintiff's rights. "It is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017). *See also Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("Because the analysis of First Amendment claims . . . involve[s] legal determination that are intensely fact specific and do not lend themselves to clear, bright-line rules . . . a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful."); *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994) (noting that decisions in the First Amendment context "tilt strongly in favor of immunity" and only in the rarest of cases will it be found that a reasonable official should have known that he violated "clearly established" law). So, Patterson is also entitled to qualified immunity on Count X for this reason.

## VI.   Hostile Work Environment

In Count II, Plaintiff alleges a claim against the County for hostile work environment. The Court finds that Plaintiff failed to exhaust this claim in his EEOC Charges. Indeed, none of the charges contain allegations of severe and pervasive harassment sufficient to maintain a hostile work environment claim. *See Ramon v. AT&T Broadband*, 195 F. App'x 860, 866 (11th Cir. 2006) (holding that plaintiff failed to exhaust administrative remedies on her hostile work environment claim where her EEOC charge did not mention a hostile work environment claim and contained no allegations of severe and pervasive harassment); *Green v. Elixir Indus., Inc.,* 152 F. App'x 838, 841 (11th Cir. 2005) (affirming district court's finding that plaintiff failed to exhaust

administrative remedies where the facts alleged in plaintiff's EEOC charge could not reasonably form the basis of a hostile work environment claim); *Smith v. Panera Bread*, 08-60697-CIV, 2009 WL 10667191, at *4 (S.D. Fla. Aug. 11, 2009) (same).

Even if Plaintiff had exhausted his administrative remedies, he fails to establish a hostile work environment claim. "A hostile work environment claim under Title VII requires proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Fernandez v. Trees*, 961 F.3d 1148, 1152 (11th Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993)). To prevail on his hostile work environment claim, a plaintiff must prove: "(1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee such as [race or age]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible under a theory of either direct liability or vicarious liability." *Id.* at 1553. To establish that the harassment is "sufficiently severe or pervasive . . . [t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive . . . and this subjective perception must be objectively reasonable." *Yelling*, 82 F. 4th at 1335 (internal citations omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation omitted). To make this determination, courts consider "(1) the conduct's frequency, (2) its severity, (3) whether it was physically threatening or humiliating, rather than 'mere offensive utterance[s],' and (4) whether it unreasonably interfered with the employee's job performance." *Id.* (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997)).

Here, the record is devoid of evidence that Plaintiff suffered a hostile work environment

based on his race or age. Following Plaintiff's reinstatement in 2014, the only evidence of the County's less than favorable treatment of Plaintiff is that he was not promoted in 2015 and 2016. Failing to get a promotion, without any other evidence of frequent and severe harassment, simply is not enough to state a claim for hostile work environment. Moreover, there is no evidence that anyone at the County made any comments about Plaintiff's race or age. As a result, the Court finds no genuine issue of material fact as to Plaintiff's hostile work environment claim and finds that the County is entitled to judgement as a matter of law on Count II.

<strong><u>CONCLUSION</u></strong>

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment, [ECF No. 70], is GRANTED.

2. Plaintiff's Motion for Final Summary Judgment, [ECF No. 72], is DENIED.

3. This case is CLOSED, and all pending motions are DENIED as MOOT.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of July, 2024.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE